In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-1580

IN RE:

JUDITH K. BAKER,

*Debtor.*

APPEAL OF:

CLAIRE ANN RESOP

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04 C 779—**Barbara B. Crabb**, *Chief Judge.*

ARGUED SEPTEMBER 12, 2005—DECIDED DECEMBER 6, 2005

Before COFFEY, EASTERBROOK, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* In 2001, Judith K. Baker purchased a 2000 Oldsmobile Alero. Financing was provided by Primus Financial Services, and the State of New Mexico issued a certificate of title listing Primus as the lienholder. Soon after the deal was made, Baker moved to Wisconsin. Although she registered her vehicle in Wisconsin after the move, Baker never obtained a Wisconsin certificate of title. The New Mexico certificate of title, however, remained in place.

In 2004, some 3 years after her move to Wisconsin, Baker filed a Chapter 7 petition in the bankruptcy court. Claire

Ann Resop was appointed trustee of Baker's bankruptcy estate. As bankruptcy trustee, Resop enjoys "strongarm" powers and may seek to avoid unperfected liens, assert a superior interest in assets, and distribute the value of those assets to other creditors. *See* 11 U.S.C. § 103(a); 11 U.S.C. § 544(a). This means she could, for example, challenge the validity of the lien Primus holds on Baker's vehicle, seek to gain control over it, sell it, and use the funds it yields to pay off general creditors to whom Baker owes money. That is what the trustee wanted to do in this case, but her efforts were thwarted by both the bankruptcy court and the district court. Today we resolve her appeal from the final judgment of the district court.

This appeal requires that we interpret several Wisconsin statutes. Under her reading of these statutes, the trustee argues that within 4 months of Baker's move to Wisconsin, Primus was required to reperfect its security interest in her vehicle there. Since Primus did not do so, the trustee believes that Primus's lien may be avoided.

Primus counters that this argument misreads Wisconsin law and that it had no duty to reperfect its interest simply because Baker moved herself and her vehicle to a different state but neglected to apply for a new title when she got there. Under Wisconsin law, Primus argues, the lien recorded on the New Mexico title remained valid.

The bankruptcy court examined the relevant statutes and agreed with Primus, as did the district court on appeal. There are no disputed facts, so our review is *de novo. Matter of Seibert*, 914 F.2d 102, 105 (7th Cir. 1990).

Our starting point is the Wisconsin motor vehicle code. Wis. Stat. § 342.19(6) provides: "If a vehicle is subject to a security interest when brought into this state, § 409.316 states the rules which apply to determine the validity and perfection of the security interest in this state."

In turn, § 409.316, which is part of the state's codification of the Uniform Commercial Code, tells us in relevant portion: "A security interest perfected pursuant to the law of the jurisdiction designated in § 409.301(1) or 409.305(3) remains perfected until the earliest of: . . . (b) The expiration of 4 months after a change of the debtor's location to another jurisdiction." § 409.316(1). Finally, we consult § 409.301(1),[1] which instructs us that "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral."

The trustee urges us to stop here and conclude that Primus's security interest in the vehicle became unperfected when Baker moved to Wisconsin and 4 months passed without Primus doing anything to reperfect its interest. And that might be a reasonable reading were it not for the fact that, as the district court explained, § 409.301(1) cannot be read without reference to the limiting language in the introduction to § 409.301. That limiting language tells us that the subsections provide the rules governing perfection "*[e]xcept as otherwise provided* in §§ 409.303 to 409.306." (Emphasis added.)

And so, turning to § 409.303, as the statutory guide-posts tell us we must, we find the reason why the trustee's attempt to avoid the lien must fail. Section 409.303 provides the relevant law on the perfection and priority of security interests for "goods covered by a certificate of title." Specifically, § 409.303(3) states: "The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a

---

[1] Section 409.305(3), which deals with investment property, is not relevant here.

certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title." In nonlawyer speak, the 4-month period for reperfection provided by § 409.316(1)(b) does not apply to titled goods. Under Wisconsin law, as long as the New Mexico title continued in force, it was sufficient to protect Primus's interest.

The trustee offers several arguments why she believes this conclusion is incorrect. Essentially, she reasons that any trip that begins at § 342.19(6), proceeds to § 409.316, but ultimately ends up at § 409.303, could only be the result of a wrong turn at § 409.301.

First, she argues that since § 409.316(1) refers only to § 409.301(1), we must read § 409.301(1) in isolation and ignore the limiting language found directly above it in § 409.301. But logic dictates that we cannot read a subsection outside the context provided by the statute's main body. The language of § 409.301(1) itself underscores this dependency, as it begins, "Except as otherwise provided in this section . . . ." Moreover, the UCC comments to § 409.301 explain that the "general rule" stated in subsection (1)—that the law of the debtor's location governs perfection of security interests—"does not apply to goods covered by a certificate of title." § 409.301 UCC cmt. 5.

The trustee also reiterates an argument she made in the district court, that tracing the proper result here to § 409.303 would render § 342.19(6) "meaningless." She reasons that since § 342.19(6) is part of the state's vehicle code and is thus a more "specific" statute, we must assume that the legislature intended it to have some effect independent of the rules of perfection found in the state's UCC, which are more "general" law. Canons of statutory construction discourage an interpretation that would render a statute meaningless and usually require that a "specific" statute prevail over a "general" one.

But, as Chief District Judge Crabb explained, the result here does not in fact render § 342.19(6) meaningless. Section 342.19(6) refers to § 409.316 as a whole. The references that ultimately lead us in this case to § 409.303 stem from § 409.316(1). Under different circumstances, other subsections of § 409.316 would operate. For example, had Baker applied for a Wisconsin title, as she should have done when she relocated to the state and registered her vehicle there, *see* Wis. Stat. § 342.05(1), this matter would be governed by § 409.316(4), which applies to goods covered by certificate of title from Wisconsin.

Moreover, a court resorts to canons of statutory construction only when statutes are in conflict and the court cannot find an answer in the plain meaning of statutory language. In this case, it is possible to determine the status of Baker's Oldsmobile by tracing our way through plain statutory language, as two judges did below. Cross-references and limiting language may be narrative annoyances to the reader, but they do not, without more, make laws ambiguous. While it may be possible that the relationship between Wisconsin's motor vehicle code and its commercial code could be made a bit more straightforward, a court's role is to apply the legislature's statutory scheme, not to improve upon it. *See In re Platter*, 140 F.3d 676, 681 (7th Cir. 1998). We do not find any internal inconsistencies or absurdities in the operation of these statutes. *See United States v. Aerts*, 121 F.3d 277, 280 (7th Cir. 1997). Thus, we may not infer, as the trustee urges, that the legislature did not intend "motor vehicles [to] simply be tossed in with all other titled goods under § 409.303."

Indeed, it is the trustee's interpretation that would yield an absurd result. The rule that a security interest must be reperfected within 4 months after a debtor moves to a new jurisdiction makes sense in the context of untitled goods. But it is unreasonable to suggest that a lienholder's interest can become undone simply because an owner

neglects her duty to apply for a new title when she changes states. Finance companies do not title vehicles, owners do. Had Baker retitled her vehicle in Wisconsin, Primus would have had to reperfect when its interest became unperfected under New Mexico law. Wis. Stat. § 409.316(4). But we know of no authority for the notion, suggested by the trustee at oral argument, that a secured creditor is obligated to keep track of the domiciles of its debtors. An important function of a title is to record a secured creditor's interest, regardless of where the payments come from, or where the debtor and vehicle may roam. In this case, the New Mexico title is the only record available, and the Wisconsin statutes yield the sensible result that, under that valid title, the creditor's interest remains perfected. The judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*