# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 11, 2012

Lyle W. Cayce
Clerk

No. 10-10979

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

HERBERT JENA,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CR-186-1

Before JONES, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Herbert Jena was indicted on twenty-six counts for his role in a tax-preparation scheme. Returns filed by Jena's business were disproportionately likely to claim a telephone tax rebate or a fuel tax credit.[1] A jury found Jena guilty of obstruction of justice, *see* 18 U.S.C. § 1503, and conspiracy to defraud

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] In 2006, 0.38% of all tax returns claimed the telephone rebate, whereas 71% of the returns prepared by Jena did. Less than .025% of tax returns claimed the fuel rebate, compared to 46% of Jena's returns.

No. 10-10979

the United States, *see id.* at § 371. A mistrial was declared as to the twenty-four other counts alleged in the indictment. The district court imposed an above-Guidelines sentence of 180 months of imprisonment (the statutory maximum), three years of supervised release, and $485,110.15 in restitution. Jena appeals his conviction and sentence as well as a number of other issues that arose during the course of the proceedings against him. We AFFIRM.

1. Jena contests the sufficiency of the evidence presented with regard to the charge that he obstructed justice by causing his attorney to furnish forged documents to the U.S. Attorney. Jena was charged with violating the catch-all clause of 18 U.S.C. § 1503(a). Under that clause, the Government must prove that "there was a pending judicial proceeding, the defendant had knowledge or notice of the pending proceeding, and the defendant acted corruptly with the specific intent to obstruct or impede the proceeding or the due administration of justice." *United States v. Neal*, 951 F.2d 630, 632 (5th Cir. 1992). The last element also requires a nexus between the act and any possible obstruction. *United States v. Aguilar*, 515 U.S. 593, 599 (1995). Jena argues that the instruction given by the district court required, as an element of the offense, the jury to find that Jena had the specific intent to corruptly influence a jury trial. He asserts that there is no evidence that he had the intention of obstructing the deliberations of the jury when he permitted his attorney to transfer certain documents to the government, and that if there is evidence of intent, there is an insufficient nexus between that conduct and the jury's deliberations.

While there is no direct evidence of Jena's intent, intent "will almost always have to be established by circumstantial evidence." *United States v. Sandlin*, 589 F.3d 749, 755 (5th Cir. 2009). Here, Jena instructed his attorneys to provide the Government with documents that his attorneys believed to be

2

No. 10-10979

"good" or "helpful." Evidence supports the conclusion that Jena knew the documents to be misleading and that the altered documents were consistent with the type of evidence that would assist the defense in proving its theory. This is sufficient. *See United States v. John*, 597 F.3d 263, 278 (5th Cir. 2010). Additionally, it is clear that the natural and probable consequences of Jena's conduct would be to affect a judicial proceeding, which satisfies *Aguilar*'s nexus requirement. *Aguilar*, 515 U.S. at 599. The Government need not establish that the conduct, in Jena's case submitting fraudulent letters, actually affected the judicial proceeding, but only that the conduct could have. *United States v. Collis*, 128 F.3d 313, 319 (6th Cir. 1997); *see also Aguilar*, 515 U.S. at 599 ("This is not to say that the defendant's actions need be successful; an 'endeavor' suffices."). Therefore, the Government sufficiently proved that Jena obstructed justice. *See United States v. Nelson*, 852 F.2d 706, 711–12 (3d Cir. 1988) (affirming an obstruction of justice conviction based on fraudulent letters).

2. Jena contends that the district court's jury instruction regarding obstruction of justice constituted a constructive amendment of the indictment, in violation of the Fifth Amendment.[2] "A constructive amendment occurs when

---

[2] The relevant portion of the indictment alleged: "On or about June 22, 2007 . . . Herbert Jena, did corruptly influence, obstruct and impede, and did endeavor to corruptly influence, obstruct and impede, the due administration of justice in a pending judicial proceeding, that is, a jury trial scheduled in the case of United States v. Herbert Jena, in the United States District Court for the Northern District of Texas, Case Number 3:07-CR-186, in that Jena, as part of the pre-trial discovery process, caused Jena's attorney to produce" altered and fraudulent documents. The closing paragraph of the count stated that "Jena engaged in the above conduct with the intent that such evidence would later be used to corruptly influence the deliberations of the jury and the ultimate outcome of the above-referenced trial." The relevant jury instruction did not mirror this language. It explained that, to find Jena guilty, the jury must be convinced of three things beyond a reasonable doubt. "First: That there was a judicial proceeding, a scheduled jury trial, pending before a federal court; Second: That the defendant knew of the pending judicial proceeding and endeavored to influence, obstruct or impede the due administration of justice in that proceeding; and Third: That the defendant's act was done 'corruptly,' that is, that the defendant acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice."

No. 10-10979

it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which she was charged." *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011) (internal quotation marks omitted). However, as long as there is no modification of an essential element of the charged offense, there is not a constructive amendment. *United States v. Munoz*, 150 F.3d 401, 417 (5th Cir. 1998).

Where, as here, the indictment contains more than the bare elements, "[w]e treat the allegation of additional facts beyond those which comprise the elements of the crime as mere surplusage." *United States v. Valencia*, 600 F.3d 389, 432 (5th Cir. 2010) (internal quotation marks omitted). We will reverse only if the difference "allows the defendant to be convicted of a separate crime from the one for which he was indicted." *United States v. Scher*, 601 F.3d 408, 411 (5th Cir. 2010) (internal quotation marks omitted). Here, the essential element at issue is knowledge of a judicial proceeding. From the face of the indictment, it is clear that Jena was indicted for causing his attorney to produce to the government specific documents in relation to his criminal trial. Jena does not put forth facts to show that the jury could have convicted him for obstructing a judicial proceeding other than the jury trial; therefore, no constructive amendment occurred. *See Munoz*, 150 F.3d at 417.

3. Jena argues that because the court disqualified his attorney, he was deprived of his Sixth Amendment right to the counsel of his choice. The district court disqualified Jena's attorney, Bill Wirskye, because of the potential conflict of interest that would arise if his attorney had to cross-examine his wife, Sarah Wirskye, who was Jena's previous attorney but also the Government's key witness on the obstruction of justice charge. It did so despite a waiver of the

4

No. 10-10979

conflict by Jena. While a defendant may waive a conflict of interest, that right is not unlimited. *See United States v. Sanchez Guerrero*, 546 F.3d 328, 333 (5th Cir. 2008). To ensure that counsel in a criminal case does not have a conflict of interest, "the district court is allowed substantial latitude to refuse such waivers in cases of either actual or potential conflict." *Id.* at 332 (internal quotation marks omitted). A district court's decision to refuse a waiver will be reversed only if "the defendant can show the district court abused its substantial discretion in this area." *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007). Although we are concerned with tactics by the Government that may cause a defendant to lose his chosen counsel, Jena has failed to meet his burden. The potential that Mr. Wirskye would need to cross-examine his wife is enough to render the district court's decision to disqualify within the bounds of its discretion.

Jena further argues that the district court erred in limiting his cross-examination of Ms. Wirskye. During the trial, Jena's court-appointed attorney cross-examined Ms. Wirskye and attempted to question her about how she would have reacted in a hypothetical situation if Jena had told her that he had lost the three letters and had subsequently recreated them. Jena asserts that it was impermissible, based on the Due Process Clause and judicial estoppel, for the Government to object once it successfully argued that Mr. Wirskye should be disqualified because he would be forced to vigorously cross-examine his wife, as these were inconsistent positions. The positions taken by the Government were not, however, inconsistent. The lack of this factual predicate dooms Jena's claim. *Hopkins v. Cornerstone America*, 545 F.3d 338, 347 (5th Cir. 2008) (judicial estoppel); *cf. Smith v. Groose*, 205 F.3d 1045, 1052 (8th Cir. 2000) (due process).

No. 10-10979

4. Jena asserts that the district court erred in limiting certain witnesses' testimony—Ms. Wirskye, Felipe Small, and Brooke Tetzlaff—based on evidentiary rulings. We review for abuse of discretion, subject to harmless error. *United States v. Girod*, 646 F.3d 304, 318 (5th Cir. 2011).

Jena argues that whether Ms. Wirskye would have advised him differently if he had told her that the letters were back-dated is relevant because her testimony would have shown that the letters were not exculpatory and, because they were not exculpatory, Jena could not have intended to provide them to the Government. This is incorrect; an individual may intend to obstruct justice yet act unsuccessfully. *See Aguilar*, 515 U.S. 601–02.

As to Small, a bank employee who handled Jena's application for a bank-statement loan, Jena urges error based on the bank statements that Small never considered during the lending process. Jena wanted to introduce the statements to show that he had enough assets to qualify for the loan, but later, Jena elicited testimony that Small's review showed that Jena had sufficient funds. Therefore, Jena elicited the information without the need to admit the pertinent exhibits into evidence. Consequently, even if the district court erred, it is hard to see how the error "affected the outcome of the district court's proceedings." *United States v. Olguin*, 643 F.3d 384, 390 (5th Cir. 2011).

Lastly, with respect to IRS Agent Tetzlaff, Jena contends the district court abused its discretion by preventing him from calling Tetzlaff to testify about an investigation in the Eastern District of Texas involving Jena's business partner, Kudzai Mangoma. Jena stated that the agent would testify that she had investigated Mangoma in another tax-fraud case and, in the course of that investigation, found no evidence of Jena's involvement. At the time when it was offered, the evidence was not relevant. *Guam v. Ignacio*, 10 F.3d 608, 615 (9th Cir. 1993) ("Evidence of third-party culpability is not admissible if it simply

6

affords a possible ground of suspicion against such person; rather, it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense." (emphasis and internal quotation marks omitted)); *see also United States v. Whitfield*, 590 F.3d 325, 361 (5th Cir. 2009) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant.").

The district court did not abuse its discretion in any of its challenged evidentiary rulings.[3]

5. Jena argues the district court violated his Fifth and Sixth Amendment rights when it considered ex parte the Government's motion to set aside the attorney-client privilege due to the crime-fraud exception. The Sixth Amendment is offense-specific. *United States v. Avants*, 278 F.3d 510, 515 (5th Cir. 2002). Thus, while Jena had a right to counsel as to the charges he was then facing—tax and bank fraud-related charges—he did not have a right to counsel with respect to the separate, as-yet-unlaid charge of obstruction of justice. Moreover, "[b]ecause the need for secrecy in grand jury proceedings prohibits an adversarial proceeding regarding ex parte, in camera evidence, courts may rely exclusively on ex parte materials in finding sufficient prima

---

[3] Jena also argues that these rulings violated his right to present a complete defense under the Sixth Amendment as well as his rights under the Confrontation Clause and Due Process Clause. In light of our conclusion that the district court did not abuse its discretion, all of these claims fail. *See Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011) ("Due process is implicated only for rulings of such a magnitude or so egregious that they render the trial fundamentally unfair." (footnotes and internal quotation marks omitted)); *United States v. Diaz*, 637 F.3d 592, 597 (5th Cir. 2011) ("The district court has discretion to place reasonable limits on a criminal defendant's right to cross-examine a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (internal quotation marks omitted)); *United States v. Najera Jimenez*, 593 F.3d 391, 402 (5th Cir. 2010) ("The accused does not have an unfettered right [under the Sixth Amendment] to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." (internal quotation marks omitted)).

facie evidence to invoke the crime-fraud exception." *In re Impounded*, 241 F.3d 308, 317 n.9 (3d Cir. 2001); *see also In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1075 (D.C. Cir. 1998). Accordingly, we find no error.

6. Jena claims that the district court erred when it determined that the crime-fraud exception to the attorney-client privilege applied in this case. As the application of the attorney-client privilege is a fact question, we review only for clear error. *In re Grand Jury Subpoenas*, 561 F.3d 408, 413 n.10 (5th Cir. 2009). To make a prima facie showing for the applicability of the crime-fraud exception necessary to overcome the attorney-client privilege, the Government need only establish "that the attorney-client relationship was intended to further continuing or future criminal or fraudulent activity." *United States v. Dyer*, 722 F.2d 174, 177 (5th Cir. 1983). Our review of the affidavits attached to the Government's motion demonstrates their sufficiency to establish a prima facie case.

7. Jena next argues that the sentences he received were unreasonable. To show the unreasonableness of the sentence, Jena must establish that it "(1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Mejia-Huerta*, 480 F.3d 713, 723 (5th Cir. 2007). Jena argues his sentence is unreasonable because his conduct is "at the lower level of culpability for conduct prohibited by the statute" and that the district court considered conduct that was not proved beyond a reasonable doubt to a jury. Such claims are meritless. First, a district court is permitted to consider other conduct beyond the immediate unlawful act. *See* 18 U.S.C. § 3353(a)(1). Second, the district court was allowed to consider facts that had not been proven beyond a reasonable

No. 10-10979

doubt because Jena's sentence for obstruction of justice did not exceed the statutory maximum. *United States v. Dison*, 573 F.3d 204, 209 (5th Cir. 2009).

Additionally, he contends that the amount of restitution he must pay is too high. Where a defendant has been convicted as part of a scheme to defraud, the district court may include all the losses caused by the scheme. *United States v. Mann*, 493 F.3d 484, 498 (5th Cir. 2007). The amount of loss "need not be determined with precision." *United States v. Reasor*, 541 F.3d 366, 369 (5th Cir. 2008). Rather, a "reasonable estimate of the loss" is all that is required. *United States v. Cooks*, 589 F.3d 173, 185 (5th Cir. 2009) (internal quotation marks omitted). We find that the restitution is such a reasonable estimate.

8. Finally,[4] Jena raises two claims prematurely—ineffective assistance of counsel and the Government's failure to turn over exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). Generally, a claim of ineffective assistance of counsel "cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Conn*, 657 F.3d 280, 287 (5th Cir. 2011) (internal quotation marks omitted). Similarly, a *Brady* claim first must be brought in district court. *United States v. Rice*, 607 F.3d 133, 142 (5th Cir. 2010). Jena has a pending motion for a new trial in the district court; yet, he asks this court to make "fact-based judgments that cannot be adequately first made on appellate review." *Id.* at 142 (internal quotation marks omitted). His claim "must be brought to the district court's attention, winnowed by the trial judge, and made part of the record through a motion for new trial." *Id.* (internal quotation marks omitted).

---

[4] In his reply brief, Jena for the first time asserts that the cumulative error doctrine requires reversal. Arguments raised for the first time in a reply brief are waived. *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005).

No. 10-10979

In order to raise these numerous issues, Jena's counsel moved this court to allow a brief over three times the word limit and over five times the page limit. *See* 5th Cir. R. 32.4. While that motion was granted, many matters raised by Jena are meritless; some are acknowledged to be foreclosed, while others are not properly before us. Additionally, without this court's leave, Jena filed a response to the Government's Rule 28(j) letter that is more than six times the word limit. *See* Fed. R. App. P. 28(j). In light of this, we find it necessary to admonish counsel that he must abide by the rules of this court and has "a duty not to pursue frivolous issues on appeal." *United States v. Glenn*, 121 F.3d 704 (5th Cir. 1997) (per curiam).

AFFIRMED.[5]

---

[5] The Government's Motion to Strike Jena's Rule 28(j) Letter is DENIED AS MOOT.